UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

BETHANY VARDAMAN,

                  Petitioner,

     v.

NANCY BERRYHILL, Acting
Commissioner of Social Security,

              Respondent.

Case No. 2:17-cv-00303-CWD

**MEMORANDUM DECISION
AND ORDER**

## INTRODUCTION

Pending before the Court is Bethany Vardaman's Petition for Review of the

Respondent's denial of social security benefits, filed on July 17, 2017. (Dkt. 1.) The

Court has reviewed the Petition for Review and the Answer, the parties' memoranda,[1]

and the administrative record (AR), and for the reasons that follow, will affirm the

decision of the Commissioner.

---

[1] Petitioner filed a motion for summary judgment. However, the District of Idaho's procedural order requires Petitioner to serve and file an opening brief in lieu of a motion. The Court therefore treats Petitioner's motion as such.

## PROCEDURAL AND FACTUAL HISTORY

Petitioner filed an application for Disability Insurance Benefits and Supplemental Security Income on May 27, 2016, alleging disability beginning January 19, 2007. This application was denied initially and on reconsideration, and a hearing was held on March 1, 2017, before Administrative Law Judge (ALJ) Jesse Shumway. After hearing testimony from Petitioner, medical expert Marian Martin, Ph.D,, and vocational expert Daniel McKinney, ALJ Shumway issued a decision finding Petitioner not disabled on March 8, 2017. Petitioner timely requested review by the Appeals Council, which denied her request for review on May 16, 2017.

Petitioner appealed this final decision to the Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

Petitioner completed high school, and thereafter served in the Navy from May 21, 2003, through January 19, 2007, where she worked as an electrical technician repairing aircraft. She was honorably discharged from the Navy on January 19, 2007. At the time of Petitioner's date last insured of September 30, 2011, she was twenty-six years of age. By the March 1, 2017 hearing, Petitioner was thirty-one years of age.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantial gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since her alleged onset

date of January 19, 2007. At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found Petitioner's major depressive disorder, anxiety disorder, post-traumatic stress disorder, borderline personality disorder, and traumatic brain injury severe within the meaning of the Regulations.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Petitioner's impairments did not meet or equal the criteria for any listed impairments, specifically considering Listings 12.04, 12.06, 12.08, and 12.15 pertaining to mental disorders. If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity (RFC) and determine, at step four, whether the claimant has demonstrated an inability to perform past relevant work.

The ALJ determined that, up through her date last insured of September 30, 2011, Petitioner retained the RFC to perform a full range of work at all exertional levels, with non-exertional limitations of unskilled and semi-skilled work in a routine, predictable work environment with no more than occasional changes; she could have only occasional, superficial contact with the public, supervisors, and coworkers; and, she could not work at an assembly-line pace. (AR 24.)

Based upon his RFC finding, the ALJ found Petitioner was not able to perform her past relevant work as an electrical technician. If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate, at step five, that the claimant retains the capacity to make an adjustment to other work that exists

**MEMORANDUM DECISION AND ORDER - 3**

in significant levels in the national economy, after considering the claimant's residual

functional capacity, age, education and work experience. Upon receiving testimony from

the vocational expert, the ALJ determined Petitioner retained the RFC to perform the

requirements of representative occupations such as garment sorter, industrial cleaner, and

laborer, stores. (AR 30.) Accordingly, the ALJ concluded Petitioner was not under a

disability at any time from January 19, 2007, the alleged onset date, through September

30, 2011, the date last insured, and issued a finding of not disabled.

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because

of the inability "to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which . . . has lasted or can be expected to

last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see

also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971).

An individual will be determined to be disabled only if her physical or mental

impairments are of such severity that she not only cannot do her previous work but is

unable, considering her age, education, and work experience, to engage in any other kind

of substantial gainful work which exists in the national economy. 42 U.S.C. §

423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if

the decision is supported by substantial evidence and is not the product of legal error. 42

U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474

(1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

When reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard a claimant's self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where

the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## DISCUSSION

Petitioner argues the ALJ erred at step four, raising the following issues in her opening brief: (1) whether the ALJ properly evaluated the medical evidence; (2) whether the ALJ properly considered Petitioner's mental impairments; (3) whether the ALJ properly evaluated Petitioner's symptom testimony and, hence, her credibility; and (4) whether the ALJ properly evaluated the Veteran's Administration disability determination. Each issue will be discussed in turn.

### 1.    Medical Evidence

Petitioner raises two arguments with regard to the medical evidence. First, she contends the ALJ failed to review the entire record, including recent medical evaluations that diagnose her with traumatic brain injury stemming from an accident in 2006. Second, she asserts the ALJ did not adequately evaluate the opinions of Petitioner's treating physician, Dr. Hampton, and the medical expert, Dr. Martin, who testified at the hearing. Petitioner argues the ALJ failed to discuss Dr. Hampton's opinion at all, and improperly assigned Dr. Martin's opinion "great weight," even though Dr. Martin is not a neurologist qualified to assess the symptoms caused by Petitioner's brain injury.

**A.** *Development of the Record*

Petitioner argues the ALJ failed to review the entire record because he did not discuss over 233 pages of recent medical records, thereby failing to develop the record. (Dkt. 18 at 17-20.) Respondent points out that the records Petitioner claims were ignored do not relate to the relevant period between Petitioner's disability onset date of January 19, 2007, through her date last insured, of September 30, 2011. Consequently, Respondent argues the ALJ did not need to expressly discuss the records given his conclusion that, despite the diagnosis of her brain injury in 2006, Petitioner did not suffer debilitating symptoms until well after September of 2011.

The claimant has the burden of proving that she became disabled prior to the expiration of her disability insured status. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). In Petitioner's case, she is advocating for application of a retrospective diagnosis based upon current medical records. In a retrospective diagnosis case, Petitioner is not entitled to disability benefits unless she can demonstrate that her disability existed prior to the expiration of her insured status. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1461 n.5 (9th Cir. 1995). In other words, Petitioner's medical records documenting her current symptoms are relevant only to the extent that her current period of disability extends back continuously to an onset date prior to the expiration of insured status. *Flaten*, 44 F.3d at 1461. Thus, the ALJ was required to evaluate the sufficiency of the evidence related to Petitioner's physical and mental condition as of September 30, 2011. Any deterioration in her condition after that date is not relevant. *Waters v. Gardner*, 425

F.2d 855, 858 (9th Cir. 1971.)

Petitioner served in the United States Navy as an electrical technician repairing aircraft from May of 2003, until January of 2007. While in the Navy, Petitioner suffered a traumatic brain injury in 2006. Petitioner claims that her injuries, and the related symptoms she suffered thereafter, were not properly diagnosed at the time of her accident. Head CT and chest X-rays taken at the time of the accident were unremarkable. (AR 821.) But, by January of 2016, Petitioner was suffering from intractable vomiting, speech disturbance, and other symptoms resembling a stroke. (AR 913.) Petitioner was referred to a neurologist, Dr. Hampton, who exmined her on March 15, 2016, and again on May 3, 2016. (AR 821-22.) A brain MRI was ordered, which showed two small areas of prior hemorrhage that Dr. Hampton (and other consulting physicians) attributed to Petitioner's 2006 accident. (AR 821-22.) Also seen on the MRI was an intracranial lipoma,[2] that Dr. Hampton opined was the cause of Petitioner's intractable nausea and vomiting, and that he attributed to the brain injury as well. (AR 821-22.)

At the hearing, the ALJ commented that he "has little doubt that [Petitioner] is currently disabled." (AR 26.) But, the ALJ noted that Petitioner's current level of functioning was not an issue he was permitted to address unless he found her disabled before her date last insured—September 30, 2011. (AR 26.) The ALJ first examined the medical evidence of record, specifically focusing on the objective medical evidence and

---

[2] A lipoma is a benign neoplasm of adipose tissue, composed of mature fat cells. Lipoma, STEDMANS MEDICAL DICTIONARY 508010.

reported symptoms before the date last insured. The ALJ noted that the objective medical evidence from that period showed findings of normal gate, no neurological deficits, and normal mental status exams. (AR 26.) Mental health treatment records similarly showed routine and conservative treatment, with reports that her symptoms were stable. (AR 26.)

While the ALJ pointed out that Petitioner alleged problems associated with nausea and vomiting prior to her date last insured, medical records and reports from the period prior to September of 2011 showed only occasional nausea, with her current level of symptoms not appearing until 2013. (AR 27.) Petitioner also informed medical personnel in November of 2016 that her nausea had been an issue for about three and one-half years, which the ALJ noted was well after her date last insured. (AR 27.) The ALJ concluded that the medical evidence did not support the level of impairment claimed before the date last insured. (AR 26.)

Next, the ALJ concluded that Petitioner's activities also did not support a finding of disability prior to the date last insured. (AR 26.) The ALJ indicated the record showed Petitioner provided childcare to her first child in October of 2006, at times as a single parent while her husband was deployed. (AR 27.) The ALJ noted also that Petitioner attended college off and on during the period before her date last insured. (AR 27.) The ALJ concluded such activities were inconsistent with allegations of disability. (AR 27.)

Thus, while the ALJ acknowledged Petitioner's 2006 brain injury and her current level of functioning, he found that her disabling symptoms attributable to either the brain injury, the lipoma, or both, were not present prior to September 30, 2011. The ALJ is not

required to discuss all evidence presented to him. *Vincent ex. rel. Vincent v. Heckler*, 739

F.2d 1393, 1394 (9th Cir. 1984). Rather, the ALJ must explain why "significant probative

evidence has been rejected." *Id.* (quoting *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir.

1981)). Here, the Court finds the evidence the ALJ failed to discuss in his determination

was neither significant nor probative, and the other medical evidence was sufficient to

support the ALJ's conclusion that, prior to September 30, 2011, Petitioner's physical and

mental conditions were not disabling.

## B. *Physician Testimony*

Petitioner argues the ALJ erred by giving great weight to the opinion of Marian

Martin, Ph.D, the non-examining expert who testified at the administrative hearing, but

failing to discuss the opinion of a treating specialist, Dr. Hampton.[3] Petitioner takes issue

also with Dr. Martin's lack of expertise vis-à-vis the physical manifestations of

Petitioner's traumatic brain injury, and with Dr. Martin's role as a non-examining

physician.

Respondent contends the ALJ properly evaluated the medical opinions and raises

four arguments regarding the ALJ's failure to evaluate Dr. Hampton's opinions: (1) Dr.

Hampton's May 2016 letter did not constitute a medical opinion; (2) Dr. Hampton's May

2016 letter did not include any functional limitations; (3) Dr. Hampton's January 2017

letter did not describe Petitioner's functional limitations during the relevant period before

---

[3] Petitioner refers to Dr. Hampton as "Dr. Hamilton" in her brief. (Dkt. 18 at 20.) However, the only physician with a similar name to have treated Petitioner and to have provided a medical source statement was Dr. Hampton. (AR 821-822.)

the date last insured; and (4) any failure of the ALJ to discuss Dr. Hampton's opinions was harmless error.

As for Dr. Martin, Respondent asserts that the ALJ considered her testimony, and concluded that, together with the medical records, Dr. Martin's psychological assessment and conclusions were substantially supported by the medical evidence of record. Further, Respondent asserts that Dr. Martin's status as a non-examining physician does not disqualify her opinion from receiving significant weight.

The Ninth Circuit Court of Appeals distinguishes among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chatter*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight is accorded to the opinion of a treating physician than to a nontreating physician. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). If the treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). If the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject the treating physician's opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). In turn, an examining physician's opinion is entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th

Cir. 1984).

An ALJ is not required to accept an opinion of a treating physician if it is conclusory and not supported by clinical findings. *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Additionally, an ALJ is not bound to a physician's opinion of a petitioner's physical condition or the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the record as a whole does not support the physician's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id.*; *Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005); *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir. 1999).

Reports of treating physicians submitted relative to Petitioner's work-related ability are persuasive evidence of a claimant's disability due to pain and her inability to engage in any form of gainful activity. *Gallant v. Heckler*, 753 F.3d 1450, 1454 (9th Cir. 1984). Although the ALJ is not bound by an expert medical opinion on the issue of disability, he must give clear and convincing reasons supported by substantial evidence for rejecting such an opinion where it is uncontradicted. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Gallant*, 753 F.2d at 1454 (citing *Montijo v. Secretary of Health & Human Services*, 729 F.2d 599, 601 (9th Cir.1984); *Rhodes v. Schweiker*, 660 F.2d 722, 723 (9th Cir. 1981)). Clear and convincing reasons must also be given to reject

a treating doctor's ultimate conclusions concerning disability, especially when they are not contradicted by another doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

### (1) *Dr. Hampton*

Dr. Hampton, Petitioner's treating neurologist, examined Petitioner on March 15, 2016, and May 3, 2016. (AR 821.) On May 20, 2016, he prepared a letter regarding his clinical findings. Dr. Hampton indicated Petitioner suffered from a traumatic brain injury in 2006, and that her recent MRI studies revealed two small areas of prior hemorrhage "due to prior head injury." (AR 821.) An intracranial lipoma, which is a congenital condition, was also seen on the MRI. (AR 822.) Dr. Hampton identified areas of "hemosiderin deposition along the tail of the lipoma and into the corpus callosum…[which] can produce difficulty with reabsorption of cerebrospinal fluid, transient increase in intracranial pressure, and subsequently intractable nausea and vomiting." (AR 822.) In Dr. Hampton's opinion, "it is more likely than not that the patient's current intractable nausea/vomiting…is, therefore, linked to her traumatic brain injury." (AR 822.)

Dr. Hampton prepared a second letter dated January 12, 2017, in which he stated that Petitioner "has a history of traumatic brain injury and has some subtle cognitive impairment as a result." (AR 999.) Dr. Hampton indicated he was currently in the process of working up that finding further. He expressed his opinion that Petitioner "has difficulty getting mentally overwhelmed easily, especially with stress," and therefore "may have a difficult time with a clinical interview in a stressful situation…." (AR 999.)

The ALJ made no mention of either letter from Dr. Hampton in his written determination, other than a passing reference by way of Dr. Martin's testimony at the hearing. (AR 28.) The ALJ noted that Dr. Martin acknowledged a neurologist suggested Petitioner's current issues were related to her traumatic brain injury, "but that there was no showing of post concussive symptoms before her date last insured." (AR 28.) The ALJ came to the similar conclusion based upon the medical evidence of record, discussed above.

The regulations require the ALJ to consider all evidence that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the commissioner, such as Petitioner's RFC, and her ability to perform work. SSR 96-5P, 1996 WL 374183 *2. An ALJ is not required to discuss every piece of medical evidence, and does not need to discuss evidence that is neither significant nor probative. *Smith v. Berryhill*, 708 F. App'x 402, 403, 2017 WL 6603509 *1 (9th Cir. 2017) (citing *Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012); *Lewis v. Apfel*, 236 F.3d 503, 512–13 (9th Cir. 2001)).

Dr. Hampton's letters do not constitute medical opinions discussing Petitioner's physical or mental functional limitations during the relevant period between Petitioner's onset date of January 19, 2007, and her date last insured of September 30, 2011. *See* SSR 96-2p, 1996 WL 374188 ("'medical opinions'" are opinions about the nature and severity of an individual's impairment(s) and are the only opinions that may be entitled to controlling weight."). While Dr. Hampton links Petitioner's 2016 symptoms to her 2006

brain injury, in neither letter does Dr. Hampton indicate that either her "current intractable nausea/vomiting" or her current mental limitations existed during the relevant time period. Consequently, neither letter was significant or probative concerning whether Petitioner exhibited disabling symptoms during the period of time between her disability onset date and date last insured. Accordingly, the Court finds the ALJ did not err by failing to discuss the letters and opinions provided by Dr. Hampton.[4]

### (2)    *Dr. Martin*

Marian Martin, Ph.D., a clinical psychologist, reviewed the entirety of the medical record, and testified at the hearing regarding her opinions concerning Petitioner's mental health condition. (AR 44, 991.) She referenced Petitioner suffered a closed head injury and concussion in February of 2006, but indicated that medical records from the period prior to Petitioner's date last insured showed no neuropsychological evaluation, and although the records contained sporadic mention of some post-concussion symptoms, such as forgetfulness, the records did not establish evidence of cognitive issues related to the head injury. (AR 44-45.) Dr. Martin noted also Petitioner received treatment for depression, anxiety, and post-traumatic stress disorder, but that medical records indicated Petitioner's mild symptoms were fairly well managed by medication and therapy, and her symptoms had improved by the date last insured. (AR 45-46.)

In Dr. Martin's opinion, Petitioner's mental health symptoms during the relevant

---

[4] The Court also need not discuss Respondent's further arguments, including harmless error.

period did not meet the criteria for a listed impairment, and she would have only mild to moderate limitations in certain cognitive areas. (AR 49-52.) Based upon Petitioner' symptoms prior to the date last insured, Dr. Martin was of the opinion Petitioner would have been able to perform some more complex or detailed tasks other than simple, repetitive tasks, and could have handled limited contact with the public, no limitations with co-workers, no fast-paced production work, and limited supervision. (AR 49-52.) The ALJ discussed Dr. Martin's opinions, and gave them significant weight on the basis of Dr. Martin's medical expertise; her familiarity with the Social Security regulations; her review of the entire record; her reasonable explanation for her opinions; and the consistency of her testimony with Petitioner's medical history and the objective medical findings in the record prior to Petitioner's date last insured. (AR 26-28.)

Petitioner contends it was error for the ALJ to give great weight to Dr. Martin's opinion, because "neurology is out of her area" of expertise and she had never examined Petitioner. However, Dr. Martin expressly noted that, while she was not qualified to address the physical effects of a traumatic brain injury, in her area of specialty she would be looking for post-concussive symptoms from a neuropsychological standpoint. (AR 47.) In other words, she would be reviewing test results or other indicia of cognitive impairment to determine if there were memory or concentration difficulties, but with regard to the physiological effects of a brain injury, she would defer to a neurologist. (AR 47-48.)

Contrary to Petitioner's argument, the Court finds Dr. Martin did not testify

beyond her area of expertise in psychology. While she acknowledged that the physical effects of Petitioner's brain injury were outside of her expertise, her testimony concerning those aspects of Petitioner's cognitive functioning was fully within her area of expertise as a mental health specialist. That Dr. Martin deferred to a neurologist for any physical findings associated with Petitioner's head injury has no bearing on Dr. Martin's assessment of Petitioner's cognitive abilities during the relevant time period.

As for Petitioner's second reason for discrediting Dr. Martin's testimony, Petitioner's argument is misplaced. While it is accurate that the opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining or treating physician, *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995), here no opinion was offered other than Dr. Martin's opinion regarding Petitioner's cognitive abilities during the relevant time period. Dr. Martin's opinion was based upon her review of the medical records, which in turn were independently reviewed by the ALJ, as discussed above. The ALJ is entitled to consult a medical expert to gain insight into what the clinical signs and other findings signify. SSR 96-2p, 1996 WL 374188; 20 C.F.R. § 404.1529(b) ("In the disability hearing process, a medical or psychological consultant may provide an advisory assessment to assist a disability hearing officer in determining whether your impairment(s) could reasonably be expected to produce your alleged symptoms.").

The Court therefore finds no error with regard to the ALJ's evaluation of Dr. Martin's testimony, and with assigning her opinions significant weight.

## 2.    Petitioner's Mental Impairments

Petitioner contends the ALJ did not apply the special technique for evaluating mental impairments commonly referred to as the Psychiatric Review Technique Form (PRTF). The Court finds otherwise.

The PRTF requires the ALJ to evaluate a claimant's pertinent symptoms and other findings to determine whether the claimant has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b). Next, the ALJ rates the degree of functional limitation resulting from the impairment. *Id.* The analysis requires the ALJ to rate the degree of limitation in four broad functional areas: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(3). The ALJ then uses a five-point scale to rate the degree of limitation in these functional areas:  none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4).

The ALJ discussed the severity of Petitioner's mental impairments in great detail and according to the PTRF. (AR 23-24.) The ALJ relied upon the testimony of the medical expert, Dr. Martin, in that regard. The ALJ determined Petitioner had no limitation in understanding, remembering, or applying information, noting Petitioner was able to attend college full time and care for her two young children at the same time. The ALJ acknowledged Petitioner had moderate limitation in interacting with others due to her borderline personality disorder traits, but noted Petitioner did appropriately interact with others on a superficial level. Next, the ALJ determined Petitioner had moderate

limitation with regard to concentrating, persisting or maintaining pace, citing her good cognition, but noting her forgetfulness at times. And finally, the ALJ concluded Petitioner had mild limitation with respect to adapting or managing oneself. As support, the ALJ cited Petitioner's ability to engage in treatment for her disorders and to care for her well-being.

A review of the ALJ's determination shows that the ALJ applied the PRTF when evaluating Petitioner's mental impairments; the Court finds no error.

**3.     Petitioner's Credibility**

Although couched in terms of a failure of the ALJ to consider Petitioner's mental and physical limitations in combination, Petitioner actually raises the issue of her credibility. Petitioner argues that she should not be penalized for maintaining some sense of normalcy by trying to attend school, and that the ALJ failed to properly determine whether Petitioner's physical and mental impairments could reasonably be expected to produce Petitioner's pain or other symptoms. Respondent contends the ALJ gave three valid reasons, supported by substantial evidence, to discount the severity of Petitioner's symptoms. First, the ALJ noted the objective medical evidence did not support Petitioner's claims about the severity of her symptoms. Second, the ALJ noted that Petitioner's testimony was undermined by evidence of conservative treatment for her mental health conditions. And third, the ALJ found Petitioner's daily activities demonstrated she was more capable than alleged.

The ALJ is responsible for determining credibility, resolving conflicts in medical

testimony, and resolving ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ's findings must be supported by specific, cogent reasons. *Reddick*, 157 F.3d at 722. If a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). *See also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (an ALJ may not discredit a claimant's subjective testimony on the basis that there is no objective medical evidence that supports the testimony). Unless there is affirmative evidence showing that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting pain testimony. *Burch*, 400 F.3d at 680. General findings are insufficient; the ALJ must identify what testimony is not credible and what evidence undermines the complaints. *Reddick*, 157 F.3d at 722.

The reasons an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999). If there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002). When the evidence can support either outcome, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

In evaluating credibility, the ALJ may engage in ordinary techniques, including considering claimant's reputation for truthfulness and inconsistencies in claimant's

testimony, or between claimant's testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir. 2002). Also, the ALJ may consider the location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; the amount and side effects of medications; and treatment measures taken by the claimant to alleviate those symptoms. *See* Soc. Sec. Ruling 96–7p.

There is no question that Petitioner's condition has deteriorated substantially after the date las tinsured, and that she currently is unable to work. However, the Court cannot agree with Petitioner that the ALJ failed to properly assess both her physical and mental conditions as reflected by the record prior to Petitioner's date last insured. The ALJ took great care to discuss the medical evidence of record prior to Petitioner's date last insured, finding that her physical limitations were minimal, and her mental health ailments improved with conservative treatment. (AR 25 – 27.) The Court's independent review of the record did not find any inconsistencies with the ALJ's conclusions.

The ALJ discussed also Petitioner's daily activities during the relevant time period. (AR 25.) She was able to attend college full time, and was a good student. Petitioner also was able to care for her children, including as a single parent when her husband was deployed. (AR 27.) The ALJ could properly conclude, based upon the evidence of Petitioner's activities, that Petitioner's symptoms at that time were not as severe as alleged.

Taken together, the reasons proffered by the ALJ constitute clear and convincing reasons as to why the ALJ did not find Petitioner's testimony entirely credible. The Court finds no merit to Petitioner's contention that the ALJ improperly considered the evidence and testimony in the record, and finds substantial evidence supports the ALJ's credibility determination.

**4.     Veteran's Administration Disability Determination**

Petitioner asserts that the ALJ failed to properly consider the VA determination of disability. An ALJ must typically give great weight to such determinations. *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002). However, a VA determination is not binding on the Social Security Administration (SSA), because the VA and SSA criteria for determining disability are not identical. *Id*. at 1076; *see also* 20 C.F.R. § 404.1504.

The ALJ may give less weight to the VA determination if the ALJ identifies persuasive, specific, and valid reasons for doing so that are supported by the record. *McCartey*, 298 F.3d at 1076. For example, in *McCartey*, the petitioner had been found to be 80% disabled by the VA and the ALJ failed to even mention that finding in his determination. *Id*. The Ninth Circuit reversed and remanded. *Id*. Therefore, in instances where an ALJ considers but ultimately rejects a VA disability rating, a court must decide whether the ALJ met the *McCartey* standard by providing persuasive, specific, and valid reasons supported by the record for rejecting the rating. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 695 (9th Cir. 2009). "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the court] to meaningfully

determine whether the ALJ's conclusions were supported by substantial evidence."

*Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (quoting *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1103 (9th Cir. 2014)).

Here, the ALJ discussed the Petitioner's 80% VA disability rating, which was effective as of June of 2010. (AR 28.) The VA determined Petitioner was 70% disabled due to post traumatic stress disorder, 10% disabled due to tinnitus, 20% disabled due to chronic cystitis, and 10% disabled due to ovary disease. The ALJ gave little weight to the VA opinion, on the grounds that it was not consistent with the medical evidence of record before Petitioner's date last insured showing Petitioner was "high functioning and doing quite well." (AR 28.) The ALJ discussed the medical evidence documenting Petitioner's symptoms existing prior to her date last insured, finding the evidence inconsistent with Petitioner's statements of disability. (AR 27-28.)

Petitioner argues that the record does not support the ALJ's determination, based upon medical evidence of her intractable vomiting and her neurological deficits, citing treatment records from 2014 and 2016. However, the VA disability rating was not based upon any of Petitioner's later physical and neurological deficits. Rather, the VA disability rating was primarily based upon Petitioner's mental health impairments. The ALJ discussed the fact that Petitioner's recent medical records regarding her neurological symptoms did not establish retrospective disability, and that the medical records from the relevant time period did not support Petitioner's claims of disabling symptoms due to her mental health impairments. The ALJ finds the ALJ provided a persuasive, specific and

valid reason supported by the record as a whole for giving the VA determination little weight. Because the ALJ considered the VA disability determination and set forth a valid reason for giving it little weight, the Court cannot say that the ALJ erred.[5]

## CONCLUSION

For the foregoing reasons, the Court will affirm the Commissioner's decision. The Court finds that the ALJ's determination was not the product of legal error and was supported by substantial evidence in the record.

## <u>ORDER</u>

Based upon the foregoing, the Court being otherwise fully advised in the premises, **it is hereby ORDERED that** the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act is **AFFIRMED** and that the petition for review is **DISMISSED**.

DATED: July 23, 2018

Honorable Candy W. Dale
United States Magistrate Judge

---

[5] The ALJ's other proffered reason, that the VA determination is based upon its own rules, and is not binding, is insufficient by itself to support rejection of the determination. *Valentine*, 574 F.3d at 695.

**MEMORANDUM DECISION AND ORDER - 24**